IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UBS Financial Services Inc., <br><br> Petitioner <br><br> v. <br><br> Eugenia Fidalgo Gutiérrez, Mercedes Fidalgo Gutiérrez, and Fidalgo Gutiérrez Holding Corp., <br><br> Respondents. | Civil No. 21-01277(GMM) |

## OPINION AND ORDER

Before the Court is UBS Financial Services Inc.'s ("Petitioner" or "UBS") *Amended Petition to Vacate Arbitration Award* (Docket No. 27) ("Petition to Vacate"); Eugenia Fidalgo Gutiérrez's, Mercedes Fidalgo Gutiérrez's, and Fidalgo Gutiérrez Holding Corp.'s ("Respondents") *Response in Opposition to Petition to Vacate, Cross-Petition to Confirm Arbitration Award and Memorandum of Law in Support* (Docket Nos. 12) ("Cross-Petition to Confirm Award"); and Petitioner's *Request for Oral Argument* (Docket No. 34) ("Motion for Oral Argument"). For the following reasons, the Court **DENIES** Petitioner's Petition to Vacate; **GRANTS** Respondent's Cross-Petition to Confirm Award; and finds Petitioner's Motion for Oral Argument **MOOT**.

Civil No. 21-01277(GMM)
Page - 2 -

## I.   BACKGROUND

This dispute arises over closed-end bonds that Respondents purchased with UBS and that Respondents alleged were poorly and improperly managed. (Docket Nos. 27 ¶¶ 11-14; 12 at 5-6). The dispute was arbitrated before a panel of three individuals through Financial Industry Regulatory Authority ("FINRA") processes. (Docket Nos. 27 ¶ 16; 12 at 5-6). Petitioner now challenges the outcome of those arbitration proceedings.

Under FINRA rules, arbitrator candidates are required to give background information and make certain disclosures regarding "all ties between the arbitrator, the parties, and the matter in dispute, no matter how remote they may seem." (Docket No. 1-12 at 17). The FINRA arbitrator selection process begins by proposing a list of 35 prospective arbitrators to parties and giving parties the candidates' Arbitrator Disclosure Reports to evaluate those candidate's qualifications or potential biases. (Docket No. 1-12 at 87). Parties are then allowed to strike and rank their preferred candidates. (Id. (a), (c)). After the parties submit their preferences, FINRA appoints a panel. (Id. (e)(1)). Following an arbitrator's appointment, but before he or she is confirmed by the parties, the nominated arbitrator must submit and sign an 'Oath of Arbitrator' that includes a list of forty-six questions regarding the nominee's background information and any new or additional disclosures the nominee may have that might affect his or her

Civil No. 21-01277(GMM)
Page - 3 -

qualifications to serve as an arbitrator in a particular dispute. (Docket Nos. 1-15; 27 ¶ 24).

In the present matter, parties engaged in the FINRA process and selected three arbitrators, one of whom was Dwayne Clark ("Clark"). (Docket Nos. 1-8; 27 ¶ 25). Clark was designated to serve as the arbitrator panel Chairperson. (Id.). On May 13, 2021, the FINRA panel issued a final Award. (Docket Nos. 1-8; 27 ¶ 17). The largest monetary component of the Award's damages found UBS to be "liable for breach of contract and rescission and shall pay to Claimants the sum of $4,654,289.00 in compensatory damages." (Docket No. 27 ¶ 17(2); 12 at 27). Only two of the three arbitrators on the panel, one of which was Clark, voted for this portion of the Award. (Docket Nos. 1-8 at 7; 27 ¶ 17). The third arbitrator stated "I concur with the Panel's Award except for the damages for rescission from which I respectfully dissent." (Id.).

Following the close of arbitration, UBS alleges that it learned that Clark had initiated five lawsuits as a plaintiff in the past twelve years. (Docket Nos. 27 ¶ 34). Neither Clark's multiple Arbitrator Disclosure Forms nor his subsequent Oath of Arbitrator divulged his involvement in at least five other independent legal proceedings. (Docket Nos. 27 ¶ 35-39).[1] In light

---

[1] The identified legal proceedings to which Clark was a Plaintiff include: (1) a November 2009 breach of contract case against United Senior Association Benefits; (2) a February 2016 medical negligence suit against unnamed defendants; (3) a May 2017 contract and tort case against Sears K-Mart for failure to repair a faulty lawn mower per its maintenance agreement; (4) a

Civil No. 21-01277(GMM)
Page – 4 –

of this revelation, on June 11, 2021, UBS filed the instant petition to vacate the Award. (Docket No. 1). UBS advanced two core arguments to support its petition: (1) Clark's purposeful omission of his past legal actions against large corporations, which indicate partiality against companies like UBS, undermined the fairness of the arbitration proceedings; and (2) the Award's recission remedy was improperly granted in a manner that amounted to a manifest disregard for the law. (Docket No. 27 ¶ 2-3).

## II.  LEGAL STANDARD

As pertinent here, the Federal Arbitration Act ("FAA") allows a court to vacate an arbitration award "where there was evident partiality or corruption in the arbitrators, or either of them"; "where the arbitrators were guilty of misconduct in. . .[engaging in] misbehavior by which the rights of any party have been prejudiced"; or "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. §§ 10(a)(2-4). However, "[a] federal court's authority to defenestrate an arbitration award is extremely limited." Mt. Valley Prop., Inc. v. Applied Risk Servs., Inc., 863 F.3d 90, 93 (1st Cir. 2017) (*quoting* First State Ins. Co. v. Nat'l Cas. Co., 781 F.3d 7, 11 (1st Cir. 2015)); *see also* Dialysis Access Ctr.,

_____

November 2019 breach of contract suit against Sears Protection Company LLC; and (5) a June 2020 slip and fall suit against Winn Dixie Stores, Inc. (Docket No. 27 ¶ 35-39).

Civil No. 21-01277(GMM)
Page – 5 –

LLC v. RMS Lifeline, Inc., 932 F.3d 1, 9 (1st Cir. 2019)(*citing*

Teamsters Local Union No. 42 v. Supervalu, Inc., 212 F.3d 59, 61

(1st Cir. 2000)) ("Arbitral awards are nearly impervious to

judicial oversight."); Unión Internacional UAW, Loc. 2415 v.

Bacardí Corp., 8 F.4th 44, 51 (1st Cir. 2021) (*quoting* Keebler Co.

v. Truck Drivers, Loc. 170, 247 F.3d 8, 11 (1st Cir. 2001))

("[j]udicial review of arbitral awards is 'extremely narrow and

exceedingly deferential.'"); Hoolahan v. IBC Advanced Alloys

Corp., 947 F.3d 101, 111 (1st Cir. 2020). The burden is on the

party challenging the arbitral award to establish that it should

be set aside. *See* UBS Fin. Servs., Inc. v. Asociacion De Empleados

Del Estado Libre Asociado De Puerto Rico, 997 F.3d 15, 17 (1st

Cir. 2021) (*citing* Ortiz-Espinosa v. BBVA Sec. of P.R., Inc., 852

F.3d 36, 48 (1st Cir. 2017)).

### III. ANALYSIS

A.   Arbitrator Clark's omissions

UBS alleges that Clark's omissions in his arbitrator

disclosure statements violated sections 10(a) (2) and (3) of the

FAA and provided grounds for vacatur. Specifically, Petitioner

states that Clark's purposeful concealment of his past litigation

is evidence of partiality and misconduct causing prejudice to a

party to the arbitration.

The standard for evaluating an arbitrator's partiality is

whether "a reasonable person would have to conclude that an

Civil No. 21-01277(GMM)
Page – 6 –

arbitrator was partial to one party to an arbitration." JCI Communications, Inc. v. IBEW, Local 103, 324 F.3d 42, 51 (1st Cir. 2003). Factors that the First and other circuits weigh in evaluating partiality include, but are not limited to: "(1) the extent and character of the personal interest, pecuniary or otherwise, of the arbitrator in the proceedings; (2) the directness of the relationship between the arbitrator and the party he is alleged to favor; (3) the connection of that relationship to the arbitrator; and (4) the proximity in time between the relationship and the arbitration proceeding." UBS Fin. Servs., 997 F.3d at 20-21 (*citing* Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co., 668 F.3d 60, 74 (2d Cir. 2012)); *see also* Three S Del., Inc. v. DataQuick Info. Sys., Inc., 492 F.3d 520, 530 (4th Cir. 2007).

To support its claim of Clark's impartiality, UBS included five lawsuits that Clark repeatedly failed to report on his FINRA arbitrator forms. (Docket No. 27 ¶ 35-39). Respondents do not contest that Clark made these omissions. They maintain, however, that such omissions are insufficient to justify a vacatur of the Award. In considering the partiality factors described by the First Circuit in UBS Fin. Servs., Inc. v. Asociacion De Empleados Del Estado Libre Asociado De Puerto Rico, the Court must agree with Respondents.

Civil No. 21-01277(GMM)
Page – 7 –

In evaluating partiality, the four factors emphasize the arbitrator's relationship and or interest in a particular party to the arbitration proceedings. Critically, they emphasize the directness, salience, and proximity in time of the relationship between a particular party, the arbitrator, and the arbitration. UBS's argument is that Clark was predisposed to be partial towards respondents. This, given his history as a "serial plaintiff" engaging in litigation actions against large corporations like Sears and Winn-Dixie grocery stores. Specifically, UBS states that Clark "repeatedly has cast himself as the 'little guy'" and in arbitration proceedings Respondents did the same claiming "they were unsophisticated investors and. . .[portrayed] UBS, as a big corporate entity." (Docket No. 27 ¶¶ 56-57). UBS further contends that because Clark "(a) was Chairman of the panel, which can have an outsized impact on the hearing; and (b) was one of two arbitrators who participated in the flawed 2-1 award on rescission that comprises the bulk of the damages" the Court should find that his alleged impartiality materially impacted the outcome of the arbitration. (Docket No. 27 ¶¶ 61).

The Court notes that Clark should have reported his involvement in past legal proceedings when he filled out FINRA's Arbitrator and Oath of Arbitrator forms. These omissions, however, are insufficient to substantiate partiality that materially prejudiced the arbitration proceedings as to either UBS or

Civil No. 21-01277(GMM)
Page – 8 –

Respondents. Notably, UBS makes no allegations that Clark was engaged in any legal proceedings against UBS, nor did it find that Clark had any personal interests in Respondents' success in the arbitration proceedings. The Court fails to identify evidence that would lead a reasonable person to conclude that Clark favored Respondents over UBS. Moreover, the burden that Petitioner must meet to justify the Court's granting of a vacatur of the Award is exceedingly high. Petitioner's evidence of partiality is not only unconvincing, but it is nowhere near robust enough to withstand the high standard necessary to justify vacatur.

B.   The Award's Recission Remedy

Petitioner also contends that the Award's recission remedy was legally improper in violation of Section 10(a)(4) of the FAA and thus supports this Court granting a vacatur of the Award. Section 10(a)(4) of the FAA allows a court to vacate an award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made" or when arbitrators engaged in a "manifest disregard of the law." *See* Raymond James Fin. Servs., Inc. v. Fenyk, 780 F.3d 59, 64 (1st Cir. 2015). Notably, it is unclear that the "manifest disregard for the law" doctrine for a vacatur remains good law. *See* id. at 64–65 (*citing* Bangor Gas Co., LLC v. H.Q. Energy Services (U.S.) Inc., 695 F.3d 181,

Civil No. 21-01277(GMM)
Page – 9 –

187 (1st Cir. 2012)) (Noting that the First Circuit has concluded in dicta that the doctrine is no longer available but has not directly addressed its viability following the Supreme Court's decision in Hall Street," Kashner Davidson Sec. Corp. v. Mscisz, 601 F.3d 19, 22 (1st Cir.2010) which limited Section 10 of the FAA to the clearly established grounds for vacatur). Assuming that the doctrine remains good law, "[t]o prevail under this theory, there must be some evidence in the record, beyond the ultimate outcome, that the arbitrator "knew the law and expressly disregarded it." Union De Tronquistas De Puerto Rico, Loc. 901 v. United Parcel Serv., Inc., 149 F.Supp.3d 246, 250 (D.P.R. 2016) (*citing* McCarthy v. Citigroup Global Mkts., Inc., 463 F.3d 87, 91-92 (1st Cir.2006)); *see also* Advest, Inc. v. McCarthy, 914 F.2d 6, 8 (1st Cir.1990) (stating "even where [a legal error by an arbitrator] is painfully clear, courts are not authorized to reconsider the merits of arbitration awards."); Colón–Vázquez v. El San Juan Hotel & Casino, 483 F.Supp.2d 147, 152-53 (D.P.R. 2007); Thomas Díaz, Inc. v. Colombina, S.A., 831 F.Supp.2d 528, 537 (D.P.R. 2011).

UBS contends that the arbitrators in this matter engaged in such a manifest disregard of the law through their legally improper award of the recission remedy. Specifically, it alleges that recission is a bidirectional remedy through which parties are restored to their prior standing. Petitioner argues that the arbitration Award ordered UBS to pay $4,654,289 for recission.

Civil No. 21-01277(GMM)
Page – 10 –

Thus, UBS states that a "proper rescission award would have involved: (1) Claimants returning the loan proceeds that they received from UBS, and (2) UBS returning to Claimants all payments of principal, interest, and fees on the loan that it received from Claimants." (Docket No. 27 at 24). UBS states that the Award does not specify such a bidirectional exchange and is thus legally improper and justifies the Court's issuance of a vacatur.

The Award states that the "Respondents UBS and UBSPR are jointly and severally liable for breach of contract and rescission and shall pay to Claimants the sum of $4,654,289.00 in compensatory damages." (Docket No. 8-1 at 4) (emphasis supplied). Indeed, there is no specification of a bidirectional remedial exchange in the actual text of the Award. Despite the alleged legal error in the award itself, Parties do not dispute that Respondents paid in full all loans, plus interest, to UBS by 2016. (Docket Nos. 12 at 4, 23; 15 at 10). Thus, to meet the de facto requirements for a legally proper recission, UBS itself would need to return "all payments of principal, interest, and fees on the loan that it received from Claimants." UBS maintains that the Award did not provide for such a return and was thus a manifest disregard for the law. This argument is unavailing.

To vacate an arbitration award under the "manifest disregard for the law" doctrine, assuming that it is still good law, the Petitioner must demonstrate not only that the arbitrators violated

Civil No. 21-01277(GMM)
Page – 11 –

the law but also that they did so knowingly and purposefully. *See*
Union De Tronquistas De Puerto Rico, Loc. 901, 149 F.Supp.3d at
250. Moreover, under this doctrine "a court may [only] vacate an
award that is '(1) unfounded in reason and fact; (2) based on
reasoning so palpably faulty that no judge, or group of judges,
ever could conceivably have made such a ruling; or (3) mistakenly
based on a crucial assumption that is concededly a non-fact.'"
Hoolahan, 947 F.3d at 119 (*quoting* Mt. Valley Prop., Inc., 863
F.3d at 95).

UBS did not provide clear evidence demonstrating that the two
arbitrators that supported the recission remedy provision of the
Award acted intentionally in a manner so outside the realm of
reasonable legality. At the time of the arbitration proceedings,
Respondents had already paid in full all loans, plus interest, to
UBS. Moreover, the text of the contested recission remedy plainly
states that the awarded $4,654,289.00 in compensatory damages was
for both breach of contract and recission. Given that both,
Petitioner and Respondents had received remedial payments from one
another in some form or fashion, it would not be wholly
unreasonable for the arbitrators to believe that the bidirectional
exchange required by a recission remedy was fulfilled in fact.
Furthermore, Petitioner notes that the third arbitrator dissented
from the recission remedy. Petitioner contends that the dissent
supports a finding that the panel was aware of the remedy's

Civil No. 21-01277(GMM)
Page – 12 –

illegality. However, the third arbitrator's dissent did not provide a reason and thus, may not support a finding that the other two arbitrators knowingly engaged in illegal actions.

Moreover, time and time again courts in this Circuit have declined to vacate an arbitration on "manifest disregard for the law" grounds. *See, e.g.,* Union De Tronquistas De Puerto Rico, Loc. 901, 149 F.Supp.3d at 250 (the Court declined to vacate an arbitration award on grounds that the arbitrator improperly interpreted the presented facts and misapplied Puerto Rico's Law 80); Hoolahan, 947 F.3d at 120 (finding that Respondent failed to demonstrate an arbitrator acted in "manifest disregard of the law" when allegedly failing to consider key facts when deciding an award); Johnson & Johnson Int'l v. Puerto Rico Hosp. Supply, Inc., 405 F.Supp.3d 333, 345 (D.P.R. 2019) (rejecting Petitioner's argument that an arbitration panel issued an award in manifest disregard for the law when it allegedly did not consider that Law 75 bars a damages award for constructive termination). The present case has not supplied this Court with sufficient evidence to go against well settled precedent. In sum, this Circuit's precedent establishes that "a district court cannot vacate an arbitration award because it. . .believes that the arbitrator made a factual or legal error." Union De Tronquistas De Puerto Rico, Loc. 901, 149 F.Supp.3d at 250 (*citing* Georgia-Pacific Corp. v. Local 27, United Paperworkers Intern. Union, 864 F.2d 940, 944 (1st Cir.

Civil No. 21-01277(GMM)
Page – 13 –

1988)); *see also* <u>United Paperworkers Intern. Union, AFL–CIO v.
Misco, Inc.</u>, 484 U.S. 29, 36 (1987).

C.   <u>Plaintiff's Judicial Estoppel Argument</u>

Respondents contend that UBS should be estopped from
relitigating the question of whether an arbitrator who omitted
information in the selection process should be vacated since it
allegedly adopted the reverse position in <u>UBS Fin. Servs. v.
Asociación de Empleados del Estado Libre Asociado de P.R.</u>, and
<u>Estate of Cadenas v. UBS Fin. Servs.</u>, 456 F.Supp.3d 351 (D.P.R.
2018). Given that the Court grants Respondent's petition to confirm
the arbitration award on other grounds, the Court finds it
unnecessary to address this argument.

**IV. CONCLUSION**

For the reasons stated above, the Court **DENIES** Petitioner's
Petition to Vacate; **GRANTS** Respondent's Cross-Petition to Confirm
Award; and finds Petitioner's Motion for Oral Argument **MOOT**. The
Court hereby confirms the Award. Judgment will be entered
accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, October 18, 2023.

<u>s/Gina R. Méndez-Miró</u>
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE